Steven J. Nataupsky (SBN 155,913)
steven.nataupsky@knobbe.com
Lynda J. Zadra-Symes (SBN 156,511)
lynda.zadrasymes@knobbe.com
Matthew S. Bellinger (SBN 222,228)
matt.bellinger@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff
MONSTER ENERGY COMPANY

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| MONSTER ENERGY COMPANY, a Delaware corporation, | Case No. 5:25-cv-1974 |
| Plaintiff, | **COMPLAINT FOR TRADEMARK COUNTERFEITING, TRADEMARK AND TRADE DRESS INFRINGEMENT, FALSE DESIGNATION OF ORIGIN, TRADEMARK DILUTION, COPYRIGHT INFRINGEMENT, AND UNFAIR COMPETITION** |
| v. | |
| TECH-E, INC. d/b/a SKYWIN, a New York corporation, and ALEXANDER IVANOV, an individual, | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff Monster Energy Company ("Plaintiff" or "Monster") hereby complains of TECH-E, Inc. d/b/a Skywin and Alexander Ivanov (collectively, "Defendants"), and alleges as follows:

## JURISDICTION AND VENUE

1.      This is an action for (i) trademark counterfeiting under 15 U.S.C. § 1114, (ii) trademark infringement under 15 U.S.C. § 1114, (iii) trademark infringement, trade dress infringement, and false designation of origin under 15 U.S.C. § 1125(a), (iv) trademark dilution under 15 U.S.C. § 1125(c), (v) copyright infringement under 17 U.S.C. § 501 *et seq*., (vi) unfair competition under California Business & Professions Code § 17200 *et seq.*, and (vii) California common law unfair competition.

2.      The Court has original subject matter jurisdiction over the claims that relate to trademark counterfeiting, trademark and trade dress infringement, false designation of origin, and trademark dilution pursuant to 15 U.S.C. §§ 1116 and 1121(a), and has original subject matter jurisdiction over the copyright infringement claim pursuant to 17 U.S.C. § 501 *et seq.* The Court also has original subject matter jurisdiction over those claims pursuant to 28 U.S.C. §§ 1331 and 1338, as the claims arise under the laws of the United States. The Court has supplemental jurisdiction pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) over the claims which arise under state statutory and common law, because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

3.      This Court has personal jurisdiction over Defendants at least because Defendants have committed acts of trademark counterfeiting, trademark and trade dress infringement, false designation of origin, trademark dilution, copyright infringement, and unfair competition in this Judicial District, including, but not limited to, by using infringing and counterfeit marks in

connection with marketing, offering for sale, and selling goods to customers in this Judicial District. These acts have occurred at least through marketing, offers for sale, and sales on Defendants' website and Amazon.com. In addition, upon information and belief, Defendant Alexander Ivanov is personally directing and causing Defendant TECH-E, Inc. to market, offer for sale, and sell the counterfeit and infringing products complained of herein to customers nationwide, including in this Judicial District. Upon information and belief, Defendants regularly conduct business within California with respect to the counterfeit and infringing goods at issue. Defendants' acts form a substantial part of the transactions, occurrences, events, and/or omissions giving rise to Monster's claims.

4.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and (c) at least because Defendant TECH-E, Inc. resides in this Judicial District by virtue of being subject to personal jurisdiction within the Judicial District, and a substantial portion of the events complained of herein took place in this Judicial District.

## THE PARTIES

5.    Monster is a corporation organized and existing under the laws of the State of Delaware, having a principal place of business at 1 Monster Way, Corona, California 92879.

6.    Upon information and belief, Defendant TECH-E, Inc. is a corporation organized and existing under the laws of the State of New York, having a principal place of business at 105 W Dewey Ave., Bldg. G, Unit 7, Wharton, New Jersey 07885.

7.    Upon information and belief, Defendant Alexander Ivanov is an individual residing at 2765 W 5th St., Apt. 19F, Brooklyn, New York 11224. Mr. Ivanov is the Chief Executive Officer, and sole officer, of TECH-E, Inc. Upon information and belief, Mr. Ivanov is the primary decision-maker for

TECH-E, Inc., including decisions regarding the adoption and use of the infringing and counterfeit marks identified herein, and all other activities alleged herein.

**FACTS COMMON TO ALL COUNTS**

**A.    Monster and Its Intellectual Property**

8.    Monster is a nationwide leader in the business of developing, marketing, and selling beverages and other goods and services.

9.    In 2002, long before Defendants' acts complained of herein, Monster launched its MONSTER ENERGY® drink brand, bearing its now famous  ® ("Claw Icon"), MONSTER®, and MONSTER ENERGY® marks. Monster also sometimes displays the MONSTER® mark in a distinctive, stylized font (**MONSTER** ®).

10.    Monster's best-selling original MONSTER ENERGY® drink, which Monster launched in 2002, is shown below.

11. Monster's successful line of MONSTER® drinks has grown to include numerous other well-known products, the containers and packaging of which are prominently marked with the MONSTER®, MONSTER ENERGY®, and/or Claw Icon marks. Monster's product lines include, but are not limited to, original MONSTER ENERGY®; MONSTER ENERGY® LO-CARB; MONSTER ENERGY® ZERO SUGAR; MONSTER ENERGY® ASSAULT®; MONSTER ENERGY NITRO®; the JUICE MONSTER® line of drinks; MONSTER ENERGY® IMPORT; the MONSTER® RESERVE line of drinks; the MONSTER ENERGY ULTRA® line of drinks; the REHAB MONSTER® (formerly MONSTER REHAB®) line of drinks; and the JAVA MONSTER® line of drinks, among other drinks. The foregoing and all of Monster's other MONSTER® branded drinks are referred to collectively herein as the "MONSTER® line of drinks."

12. In addition, since 2002, Monster has consistently used a distinctive trade dress in connection with the product packaging and promotional materials for its MONSTER® brand. This trade dress includes prominent use of the colors green and black, or green, black, and white, in combination with the MONSTER® mark and/or the Claw Icon mark (the "MONSTER Trade Dress"). An example of the MONSTER Trade Dress as displayed on the original MONSTER ENERGY® drink is shown in Paragraph 10, *supra*.

13. The MONSTER Trade Dress exclusively serves to distinguish Monster's goods and services from those of others. The trade dress is also non-functional. The trade dress does not describe the content of Monster's drinks. Monster's exclusive use of the trade dress also does not hinder competition or put competitors at a significant non-reputational disadvantage. Indeed, the design features of the MONSTER Trade Dress are not essential to the packaging or products, and do not make the packaging or products less expensive or easier to manufacture.

14. Since long before the acts of Defendants complained of herein, Monster has also continuously used its Claw Icon mark, MONSTER® and MONSTER ENERGY® marks, and the MONSTER Trade Dress in connection with a wide variety of other products, including beverageware, such as the can insulator and can sleeve shown below.




15. Monster is also the owner of numerous trademark registrations for its Claw Icon mark, MONSTER® and MONSTER ENERGY® marks, and MONSTER Trade Dress, in connection with beverages, beverageware, and other goods and services, including the following U.S. Trademark Registrations:

| Mark | Reg. No. | Goods/Services | Date Filed | Reg. Date |
|---|---|---|---|---|
| | 2,903,214 | Cl. 32: drinks, namely, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated and non-carbonated energy or sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/7/2003 | 11/16/2004 |

| Mark | Reg. No. | Goods/Services | Date Filed | Reg. Date |
|---|---|---|---|---|
|  | 3,434,822 | Cl. 32: non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 9/7/2007 | 5/27/2008 |
|  | 4,625,118 | Cl. 29: dairy-based beverages<br><br>Cl. 30: ready to drink tea and tea based beverages; ready to drink flavored tea, tea based beverages; ready to drink coffee and coffee based beverages; ready to drink flavored coffee and coffee based beverages | 6/4/2014 | 10/21/2014 |
|  | 5,022,676 | Cl. 5: nutritional supplements in liquid form<br><br>Cl. 32: non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 5/28/2014 | 8/16/2016 |
|  | 5,580,962 | *inter alia*,<br>Cl. 32: non-alcoholic beverages, namely, energy drinks, sports drinks, and sports and/or energy drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs | 5/17/2018 | 10/9/2018 |
|  | 5,889,011 | *inter alia*,<br>Cl. 21: beverageware; insulated beverage containers for domestic use; heat-insulated containers for beverages; bottles, sold empty; drinking bottles for sports; water bottles sold empty; bottle openers; non-electric portable coolers; non-electric portable beverage coolers; shaker bottles sold empty; blender bottles sold empty; sports gloves, namely, work gloves in the nature of mechanics' gloves | 1/16/2019 | 10/22/2019 |

| Mark | Reg. No. | Goods/Services | Date Filed | Reg. Date |
|---|---|---|---|---|
|  | 6,472,561 | Cl. 35: on-line retail store services featuring bags, luggage, beverageware, coolers, refrigeration equipment, beverage storage equipment, personal care products, clothing, headwear, footwear, gloves, tool kits, helmets, umbrellas, blankets, tents, towels, sporting equipment, musical instruments and accessories, sound and audio equipment and accessories, timepieces, jewelry, toys, toy cars, location tracking devices, charging devices, video game equipment and accessories, games, furniture, notebooks, coasters, posters, and point-of-sale accessories; retail store services featuring bags, luggage, beverageware, coolers, refrigeration equipment, beverage storage equipment, personal care products, clothing, headwear, footwear, gloves, tool kits, helmets, umbrellas, blankets, tents, towels, sporting equipment, musical instruments and accessories, sound and audio equipment and accessories, timepieces, jewelry, toys, toy cars, location tracking devices, charging devices, video game equipment and accessories, games, furniture, notebooks, coasters, posters, and point-of-sale accessories | 7/20/2020 | 8/31/2021 |
|  | 7,348,439 | Cl. 32: drinking water; energy drinks; flavored waters; fruit drinks; soft drinks; sparkling water; sports drinks; water beverages | 9/1/2022 | 4/2/2024 |
|  | 7,348,441 | Cl. 32: drinking water; energy drinks; flavored waters; fruit drinks; soft drinks; sparkling water; sports drinks; water beverages | 9/1/2022 | 4/2/2024 |

| Mark | Reg. No. | Goods/Services | Date Filed | Reg. Date |
|---|---|---|---|---|
| MØNƧTER | 6,451,182 | Cl. 32: non-alcoholic beverages, namely, soft drinks, energy drinks, sports drinks, and fruit juice drinks | 12/13/2017 | 8/17/2021 |
| MONSTER | 6,760,278 | Cl. 32: energy drinks; fruit drinks; soft drinks: sports drinks | 8/26/2021 | 6/14/2022 |
| MONSTER | 7,348,438 | Cl. 30: tea; chocolate-based beverages; coffee based beverages; coffee drinks; tea-based beverages  Cl. 32: drinking water; sparkling water; water beverages | 9/1/2022 | 4/2/2024 |
| MØNƧTER | 7,348,440 | Cl. 30: tea; chocolate-based beverages; coffee based beverages; coffee drinks; tea-based beverages  Cl. 32: drinking water; sparkling water; water beverages | 9/1/2022 | 4/2/2024 |
| MONSTER ENERGY | 3,044,315 | Cl. 5: nutritional supplements in liquid form, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/23/2003 | 1/17/2006 |
| MONSTER ENERGY | 3,057,061 | Cl. 32: fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, carbonated soft drinks, carbonated drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 4/18/2002 | 2/7/2006 |
| MONSTER ENERGY | 4,036,681 | Cl. 32: non-alcoholic beverages, namely, energy drinks, excluding perishable beverage products that contain fruit juice or soy | 9/11/2007 | 10/11/2011 |
| MONSTER ENERGY | 5,820,689 | *inter alia*, Cl. 21: beverageware; insulated beverage containers for domestic use; bottles, sold empty; drinking bottles for sports; water bottles sold empty; bottle openers | 1/15/2019 | 7/30/2019 |

| Mark | Reg. No. | Goods/Services | Date Filed | Reg. Date |
|---|---|---|---|---|
|  | 3,134,841 | Cl. 32: beverages, namely, carbonated soft drinks, carbonated soft drinks enhanced with vitamins, minerals, nutrients, amino acids and/or herbs, carbonated energy and sports drinks, fruit juice drinks having a juice content of 50% or less by volume that are shelf stable, but excluding perishable beverage products that contain fruit juice or soy, whether such products are pasteurized or not | 5/7/2003 | 8/29/2006 |
|  | 4,865,702 | Cl. 5: nutritional supplements in liquid form<br><br>Cl. 32: non-alcoholic beverages, namely, carbonated soft drinks; carbonated drinks enhanced with vitamins, minerals, nutrients, proteins, amino acids and/or herbs; carbonated energy drinks and sports drinks | 2/2/2015 | 12/8/2015 |
|  | 5,664,586 | Cl. 21: beverageware; insulated beverage containers for domestic use; drinking bottles for sports; water bottles sold empty | 12/4/2017 | 1/29/2019 |

16.     Copies of the foregoing registrations are attached hereto as **Exhibits A1–A20**. Collectively, the above registrations and trademarks, including all common law rights therein, are referred to as the "MONSTER Marks."

17.     Under 15 U.S.C. § 1065, U.S. Trademark Registration Nos. 2,903,214; 3,434,822; 4,625,118; 5,022,676; 3,044,315; 3,057,061; 4,036,681; 3,134,841; and 4,865,702 are incontestable.

18.     In addition, Monster is the owner of valid copyright registrations for its Claw Icon and can art and packaging designs featuring its Claw Icon,

including U.S. Copyright Registrations Nos. VA 1-433-242, VA 1-433-572, and VA1-433-241. Collectively, these registrations are referred to as the "Copyrighted Claw Icon Designs." Attached hereto as **Exhibits B1–B3** are true and correct copies of Monster's copyright registrations.

19. Monster's MONSTER® line of drinks has achieved substantial commercial success. Since 2002, Monster has sold approximately 63.8 billion cans of its MONSTER® line of drinks worldwide, the vast majority of which sales occurred in the United States. Currently, by unit volume and dollar value, the MONSTER® line of drinks are among the top two best-selling energy drinks in the United States. Monster has generated over $1 billion in gross sales in the United States of the MONSTER® line of drinks each year since 2011. Monster generated over $4 billion in gross sales in 2024 alone.

20. Monster's beverages are sold at hundreds of thousands of locations across the United States, including convenience stores, grocery stores, and mass retailers.

21. Monster also uses its MONSTER Marks and MONSTER Trade Dress in connection with extensive marketing campaigns. Monster has and continues to widely market and promote its MONSTER Marks and MONSTER Trade Dress to consumers by, for example, displaying the marks and trade dress on merchandise and product samplings; extensively on billions of cans of beverages; on promotional and point-of-sale materials; in magazines and other industry publications; on Monster's websites and social media sites; at trade shows and other live events; and through the sponsorship of athletes, teams, and sports events, music festivals, and other live events. Since 2002, Monster has spent over $8.5 billion marketing and promoting the MONSTER® brand, including the MONSTER Marks and MONSTER Trade Dress, in the United States alone.

22.    As a result of Monster's substantial use and promotion, and since long before the acts of Defendants complained of herein, the MONSTER Marks and MONSTER Trade Dress have acquired immense value as specific identifiers of Monster's products and services, and serve to distinguish Monster's products and services from those of others. Customers in this Judicial District and elsewhere readily recognize Monster's MONSTER Marks and MONSTER Trade Dress as distinctive designations of the origin of Monster's products and services. The MONSTER Marks and MONSTER Trade Dress are intellectual property assets of enormous value, serving as symbols of Monster and its quality products, services, reputation, and goodwill.

**B.    Defendants' Infringing Activities**

23.    Without permission or consent from Monster, Defendants have marketed, offered for sale, and sold to consumers unauthorized "can sleeves" (the "Infringing Products") bearing counterfeit and infringing marks and designs that are identical to, or substantially similar to, the MONSTER Marks, MONSTER Trade Dress, and the Copyrighted Claw Icon Designs. The Infringing Products are designed to be placed over a can (such as a beer can) to disguise the can and make it look like a can of Monster's original MONSTER ENERGY® drink. An example of the Infringing Products as previously displayed and offered for sale on Defendants' website, www.skywin.info, is shown below.



24.     As shown above, the title for the Infringing Product states: "Beerskin Silicone Can Sleeve – Beer Can Cover Can Hides Beer Can by Disguising It As A Can of Soda (Black)." The product listing elsewhere describes that the can sleeve "look[s] like a Soda Can covered by a well-known brand with Original Artwork design of a Soda to Disguise its Content" (emphasis added). The reference to a "well-known brand with Original Artwork design" clearly refers to Monster's MONSTER® brand of drinks and to the MONSTER Marks and MONSTER Trade Dress.

25.     As shown above, the Infringing Products prominently display a counterfeit copy of Monster's Claw Icon mark on the front of the can sleeve. The word "MOMSTER" on the Infringing Products is a slight misspelling of, and confusingly similar to, Monster's MONSTER® mark (and the phrase "MOMSTER ENERGY" on the Infringing Products is confusingly similar to Monster's MONSTER ENERGY® mark). The MOMSTER mark is also displayed in a font that is nearly identical to the font used by Monster for its

**MØNSTER** ® mark. The Infringing Products also display the MONSTER Trade Dress, including the Claw Icon mark in the color green against a black background, and the infringing MOMSTER mark displayed in the color white.

26.   As shown in the images below, in which a can of Monster's original MONSTER ENERGY® drink is shown on the left and an Infringing Product is shown on the right placed over a can as Defendants intend it to be used, the Infringing Products look strikingly similar to a can of Monster's original MONSTER ENERGY® drink. Of course, this is the intended result of Defendants' products.







27.    Defendants also do business on Amazon through their Skywin Amazon store, operated under the seller name "Key Savings," and under the seller name "S mart Gizmos." Defendants have marketed and sold the Infringing Products through these Amazon accounts.

28.    Defendants have marketed, offered for sale, and sold the Infringing Products to customers in California, including to customers in this Judicial District.

29.    Defendants are not affiliated with Monster. At no time has Monster ever given Defendants license, permission, or authority to use or display the MONSTER Marks, MONSTER Trade Dress, or Copyrighted Claw Icon Designs.

30.    Defendants knew of the MONSTER Marks, MONSTER Trade Dress, and Copyrighted Claw Icon Designs when Defendants began marketing, offering for sale, and selling the Infringing Products. Defendants intentionally designed the Infringing Products to look like a can of Monster's original MONSTER ENERGY® drink. Defendants brazenly promoted that the Infringing Products "look[s] like a Soda Can covered by a well-known brand with Original Artwork design of a Soda to Disguise its Content" on their website listing. Defendants also promote on their "S mart Gizmos" Amazon listing that the Infringing Products "expertly imitate the look of a soda can, complete with original artwork from a renowned brand, flawlessly camouflaging the contents."

31.    Monster notified Defendants of their infringement of the MONSTER Marks, MONSTER Trade Dress, and Copyrighted Claw Icon Designs, including in cease and desist correspondence dated May 22, 2025, and June 19, 2025, and demanded that Defendants stop their unlawful activities. However, despite claiming in a letter dated June 25, 2025 that Defendants had ceased marketing and selling the Infringing Products, Defendants have continued to sell the Infringing Products in blatant and willful disregard of Monster's valuable intellectual property rights.

32.    Defendants' acts complained of herein have been willful and deliberate. Defendants have intentionally attempted to capitalize on Monster's valuable reputation and customer goodwill in the MONSTER Marks and

-15-

MONSTER Trade Dress by using marks and a trade dress that are identical or confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress and by using designs that are identical or substantially similar to Monster's Copyrighted Claw Icon Designs. Defendants' actions alleged herein are intended to cause confusion, mistake, or deception (including post-sale confusion) as to the source of the Infringing Products and are intended to cause consumers and potential customers to believe that the products are associated with Monster, when they are not.

33.    By virtue of the acts complained of herein, Defendants have created a likelihood of injury to Monster's business reputation and goodwill, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Monster's goods and the Infringing Products, and have otherwise competed unfairly with Monster by unlawfully trading on and using the MONSTER Marks, MONSTER Trade Dress, and Copyrighted Claw Icon Designs without Monster's permission or consent.

34.    Defendants' acts complained of herein have caused damage to Monster in an amount to be determined at trial, and such damages will continue to increase unless Defendants are enjoined from their wrongful acts and infringement.

35.    Defendants' acts complained of herein have caused Monster to suffer irreparable injury to its business. Monster will suffer substantial loss of goodwill and reputation unless and until Defendants are preliminarily and permanently enjoined from the wrongful acts complained of herein.

## FIRST CLAIM FOR RELIEF

### (Trademark Counterfeiting Under 15 U.S.C. § 1114)

36.    Monster incorporates by reference and realleges each of the allegations set forth in Paragraphs 1–35 of this Complaint as if set forth fully herein.

37.     This is a claim for trademark counterfeiting arising under 15 U.S.C. § 1114.

38.     Defendants have intentionally used in commerce, without permission from Monster, marks that are identical to or substantially indistinguishable from Monster's registered MONSTER Marks listed in Paragraph 15 of the Complaint in connection with marketing, offering for sale, and selling the Infringing Products. Such use is likely to cause confusion, or to cause mistake, or to deceive.

39.     The marks listed in Paragraph 15 are registered for goods including beverageware and beverages, and were registered before Defendants commenced the acts complained of herein. The Infringing Products are can sleeves, which are a type of beverageware, and are designed to make a beverage can look like one of Monster's beverages. Thus, the Infringing Products and the goods covered by Monster's trademark registrations are identical or highly related.

40.     Defendants have used the non-genuine marks in connection with their business knowing that the marks are counterfeit. The activities of Defendants complained of herein constitute willful and intentional trademark counterfeiting, and Defendants acted with an intent to unfairly compete against Monster, to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public, and to deceive the public into believing that the Infringing Products originate from Monster or are otherwise associated with, sponsored by, or approved by Monster, when, in fact, they are not.

41.     Defendants had actual knowledge of Monster's ownership and prior use of the registered marks and without the consent of Monster, have willfully and intentionally violated 15 U.S.C. § 1114. Based on the foregoing, this is an exceptional case within the meaning of 15 U.S.C. § 1117.

-17-

42.    Defendants, by their actions, have irreparably injured Monster and damaged Monster in an amount to be determined at trial. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. § 1114)

43.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1–42 of this Complaint as though fully set forth herein.

44.    This is a claim for trademark infringement arising under 15 U.S.C. § 1114.

45.    Monster owns valid and enforceable federally registered trademarks for the MONSTER Marks, including the registrations listed in Paragraph 15 of this Complaint and which predate the acts of Defendants complained of herein.

46.    Defendants have directly infringed the federally registered MONSTER Marks by using in commerce, without permission from Monster, colorable imitations and/or confusingly similar marks to the MONSTER Marks.

47.    Defendants have used the aforementioned marks in connection with marketing, offering for sale, and selling the Infringing Products. Such use is likely to cause confusion or mistake, or to deceive.

48.    The activities of Defendants complained of herein constitute willful and intentional infringements of Monster's registered marks, and Defendants acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that the Infringing Products are associated with, sponsored by, originated from, or are approved by, Monster, when they are not.

49.    Defendants had actual knowledge of Monster's ownership and prior use of the MONSTER Marks, and willfully violated 15 U.S.C. § 1114.

50.    Defendants, by their actions, have damaged Monster in an amount to be determined at trial.

51.    Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF

### (Trademark Infringement, Trade Dress Infringement, and False Designation of Origin Under 15 U.S.C. § 1125(a))

52.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1–51 of this Complaint as though fully set forth herein.

53.    This is an action for trademark infringement, trade dress infringement, and false designation of origin arising under 15 U.S.C. § 1125(a).

54.    As a result of the widespread use and promotion of Monster's MONSTER Marks and MONSTER Trade Dress, and since long before the acts of Defendants complained of herein, the marks and trade dress have acquired strong secondary meaning to consumers and potential customers, in that consumers and potential customers have come to associate the MONSTER Marks and MONSTER Trade Dress with Monster.

55.    Defendants have infringed the MONSTER Marks and MONSTER Trade Dress and created a false designation of origin, by using in commerce, without Monster's permission, trademarks and trade dress that are identical and/or confusingly similar to Monster's MONSTER Marks and MONSTER Trade Dress in connection with marketing, offering for sale, and selling the Infringing Products.

56.    Defendants' actions are likely to cause confusion and mistake, or to deceive, as to the affiliation, connection, or association of Monster with Defendants, and/or as to the origin, sponsorship, or approval of the Infringing Products or Defendants' commercial activities, in violation of 15 U.S.C. § 1125(a).

57.    The activities of Defendants complained of herein constitute willful and intentional infringements of the MONSTER Marks and MONSTER Trade Dress, and Defendants acted with the intent to trade upon Monster's reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that the Infringing Products originate from or are otherwise associated with, sponsored by, or approved by Monster, when they are not.

58.    Defendants had actual knowledge of Monster's ownership and prior use of the MONSTER Marks and MONSTER Trade Dress and without the consent of Monster, willfully violated 15 U.S.C. § 1125(a).

59.    Defendants, by their actions, have damaged Monster in an amount to be determined at trial.

60.    Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## **FOURTH CLAIM FOR RELIEF**

### **(Trademark Dilution Under 15 U.S.C. § 1125(c))**

61.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1–60 of this Complaint as though fully set forth herein.

62.    This is a claim for federal trademark dilution arising under 15 U.S.C. § 1125(c).

63.    Monster's beverages sold under Monster's Claw Icon mark have been widely advertised, promoted, and distributed to the purchasing public throughout the United States and the world. By virtue of the wide renown acquired by Monster's Claw Icon mark, coupled with the widespread distribution and extensive sale of various products distributed under the Claw Icon mark, the Claw Icon mark is famous and became so prior to Defendants' acts complained of herein.

64.    Defendants' unauthorized and commercial use of Monster's Claw Icon mark in connection with marketing, offering for sale, and selling the Infringing Products has caused and is likely to continue to cause dilution of the distinctive qualities of Monster's famous Claw Icon mark.

65.    Defendants' acts are likely to tarnish, injure, or trade upon Monster's business, reputation or goodwill, and to deprive Monster of the ability to control the use of its Claw Icon mark and the quality of products associated therewith.

66.    Defendants' acts of dilution have been willful and deliberate.

67.    Defendants, by their actions, have damaged Monster in an amount to be determined at trial.

68.    Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF

### (Copyright Infringement Under 17 U.S.C. § 501 *et seq.*)

69.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1–68 of this Complaint as though fully set forth herein.

70.    This is an action for copyright infringement under the Copyright Act, 17 U.S.C. § 501, *et seq.*

-21-

71.    Monster is the owner of valid and enforceable copyrights in the Claw Icon, can art, and packaging, which contain copyrightable subject matter under 17 U.S.C. § 101, *et seq*.

72.    Monster has complied with the registration requirements of 17 U.S.C. § 411(a) for the Copyrighted Claw Icon Designs, and has obtained Copyright Registration Nos. VA 1-433-242, VA 1-433-572, and VA1-433-241.

73.    Defendants have unlawfully copied protected elements of Monster's Copyrighted Claw Icon Designs.

74.    Defendants had access to Monster's Copyrighted Claw Icon Designs at least because Monster displays its Copyrighted Claw Icon Designs on its beverages, its widespread promotional materials, and its publicly-available websites and social media sites. Defendants also had access to Monster's Copyrighted Claw Icon Designs because Monster previously notified Defendants of their infringement of those copyrighted designs.

75.    Without permission from Monster, Defendants have directly infringed Monster's Copyrighted Claw Icon Designs by distributing, displaying, and reproducing identical and substantially similar designs bearing protected elements of Monster's Copyrighted Claw Icon Designs.

76.    Defendants' deliberate copying of Monster's Copyrighted Claw Icon Designs infringes and continues to infringe Monster's Copyrighted Claw Icon Designs in violation of 17 U.S.C. § 501(a). Defendants are infringing on Monster's exclusive right to reproduce copies, make derivative works, distribute copies, and display its Copyrighted Claw Icon Designs under 17 U.S.C. § 106(1)–(3), (5).

77.    Defendants' infringement has been willful and deliberate.

78.    Defendants, by their actions, have damaged Monster in an amount to be determined at trial.

79.    Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

### SIXTH CLAIM FOR RELIEF

**(Unfair Competition Under California Business & Professions Code § 17200 *et seq.*)**

80.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1–79 of this Complaint as though fully set forth herein.

81.    This is an action for unfair competition under California Business & Professions Code § 17200, *et seq.*

82.    By virtue of the acts complained of herein, Defendants have intentionally caused a likelihood of confusion among consumers and the public and have unfairly competed with Monster in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*

83.    Defendants' acts complained of herein constitute trademark infringement, trade dress infringement, and unfair competition which have injured and damaged Monster.

84.    Defendants, by their actions, have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

### SEVENTH CLAIM FOR RELIEF

**(California Common Law Unfair Competition)**

85.    Monster hereby repeats, realleges, and incorporates by reference Paragraphs 1–84 of this Complaint as though fully set forth herein.

86.    This is an action for unfair competition under the common law of the State of California.

-23-

87.    Defendants' acts complained of herein constitute trademark infringement, trade dress infringement, and unfair competition under the common law of the State of California.

88.    By virtue of the acts complained of herein, Defendants have willfully and intentionally caused a likelihood of confusion among the purchasing public in this Judicial District and elsewhere, thereby unfairly competing with Monster in violation of the common law of the State of California.

89.    Defendants' aforementioned acts have damaged Monster in an amount to be determined at trial.

90.    Defendants have irreparably injured Monster. Such irreparable injury will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Monster's rights, for which Monster has no adequate remedy at law.

91.    Defendants' willful acts of unfair competition under California common law constitute fraud, oppression, and malice. Accordingly, Monster is entitled to exemplary damages pursuant to Cal. Civ. Code § 3294(a).

**PRAYER FOR RELIEF**

WHEREFORE, Monster prays for judgment against Defendants as follows:

1.    That the Court render a final judgment in favor of Monster and against Defendants on all claims for relief alleged herein;

2.    That the Court render a final judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1114 by counterfeiting Monster's registered trademarks, including at least the marks that are the subject of the U.S. Trademark Registrations listed in Paragraph 15 of this Complaint;

3.    That the Court render a final judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1114 by infringing Monster's

registered trademarks, including at least the marks that are the subject of the U.S. Trademark Registrations listed in Paragraph 15 of this Complaint;

4.    That the Court render a final judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1125(a) by infringing the MONSTER Marks and MONSTER Trade Dress by using a false designation of origin, false description, or false representation through the marketing, offering for sale, and selling the Infringing Products;

5.    That the Court render a final judgment that Defendants have willfully violated the provisions of 15 U.S.C. § 1125(c) by diluting Monster's famous Claw Icon mark;

6.    That the Court render a final judgment that Defendants have willfully violated 17 U.S.C. § 501(a) by infringing Monster's Copyrighted Claw Icon Designs;

7.    That the Court render a final judgment that Defendants have willfully violated the provisions of California Business & Professions Code § 17200, *et seq.* by committing trademark infringement, trade dress infringement, and unfairly competing with Monster;

8.    That the Court render a final judgment that Defendants have willfully violated California common law by unfairly competing with Monster;

9.    That the Court preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, successors, and assigns, and all other persons in active concert or participation with any of them who receive actual notice of the injunction by personal service or otherwise, from:

   a.    manufacturing, distributing, shipping, importing, reproducing, displaying, advertising, marketing, promoting, transferring, selling, and/or offering to sell the Infringing Products or any other products bearing any of the MONSTER Marks or MONSTER Trade Dress, any confusingly similar marks or trade dress, or Monster's

Copyrighted Claw Icon Designs or any designs substantially similar thereto.

     b.    otherwise using any of the MONSTER Marks, MONSTER Trade Dress, and/or Copyrighted Claw Icon Designs on or in connection with any of Defendants' products, using any of the MONSTER Marks, MONSTER Trade Dress, and/or Copyrighted Claw Icon Designs in advertising or promoting any of Defendants' products, and/or using confusingly similar variations of any of the MONSTER Marks or MONSTER Trade Dress in any manner that is likely to create the impression that Defendants' products originate from Monster, are endorsed by Monster, or are connected in any way with Monster;

     c.    copying, reproducing, distributing, displaying, creating derivative works of Monster's Copyrighted Claw Icon Designs and/or importing, manufacturing, or producing any products bearing copies or derivative works of Monster's Copyrighted Claw Icon Designs;

     d.    filing any applications for registration of any trademarks, trade dress, copyrighted works, or designs confusingly similar to the MONSTER Marks or MONSTER Trade Dress, and/or substantially similar to the Copyrighted Claw Icon Designs;

     e.    otherwise infringing any of the MONSTER Marks, MONSTER Trade Dress, or Copyrighted Claw Icon Designs;

     f.    diluting the Claw Icon mark;

     g.    falsely designating the origin of Defendants' products in any manner suggesting that Defendants' products originate from Monster;

     h.    unfairly competing with Monster in any manner whatsoever; and

     i.    causing a likelihood of confusion or injury to Monster's business reputation;

-26-

10.    That the Court order Defendants to file with this Court and serve on Monster within thirty (30) days after the service of the injunction, a report, in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction pursuant to 15 U.S.C. § 1116;

11.    That Defendants account to Monster for any and all profits derived by Defendants and all damages sustained by Monster by virtue of Defendants' acts complained of herein;

12.    That Defendants pay over to Monster all damages which Monster has sustained as a consequence of the acts complained of herein, subject to proof at trial, together with prejudgment and post-judgment interest;

13.    That, at Monster's election, Defendants pay over to Monster statutory damages under 15 U.S.C. § 1117(c) of up to $2,000,000 for each of Monster's marks that Defendants have counterfeited;

14.    That the Court find this case exceptional and order the amount of the damages be trebled and increase the amount of profits as many times as the Court deems appropriate, pursuant to 15 U.S.C. § 1117;

15.    That the Court enter an award of Monster's damages and Defendants' profits under 17 U.S.C. § 504, as well as enhanced damages pursuant to 17 U.S.C. § 504. Alternatively, if Monster elects, an award of statutory damages pursuant to 17 U.S.C. § 504;

16.    That the Court enter an award of exemplary damages from Defendants pursuant to Cal. Civ. Code. § 3294;

17.    That Defendants' actions be deemed willful;

18.    That the Court enter an award of Monster's reasonable costs, expenses, and attorneys' fees pursuant to at least 15 U.S.C. § 1117 and 17 U.S.C § 505;

19.    That the Court order Defendants to deliver and destroy all devices, literature, advertising, goods, and other unauthorized materials bearing any of

-27-

the MONSTER Marks, MONSTER Trade Dress, and/or Copyrighted Claw Icon Designs pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503; and

20.    That the Court award Monster such other and further relief as this Court may deem just.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: July 30, 2025         By: /s/ Matthew S. Bellinger
                                 Steven J. Nataupsky
                                 Lynda J. Zadra-Symes
                                 Matthew S. Bellinger

                                 Attorneys for Plaintiff,
                                 MONSTER ENERGY COMPANY

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Monster hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  July 30, 2025          By:  */s/ Matthew S. Bellinger*
                                   Steven J. Nataupsky
                                   Lynda J. Zadra-Symes
                                   Matthew S. Bellinger

                                   Attorneys for Plaintiff,
                                   MONSTER ENERGY COMPANY

-29-